**SECURITIES AND EXCHANGE COM-MISSION, Plaintiff,**

v.

**BELMONT OIL CORPORATION, James B. Boren, Joel A. Fox, National Registrar and Transfer Company, Peerless-New York, Incorporated, Edward Cantor, Michael Canter, Morris J. Reiter, d/b/a M. J. Reiter Company, Myron Rosenthal and Howard G. Stolle, d/b/a H. G. Stolle and Company, Carlton Securities, Inc., David Mandel, Harry Cohen, Abe Bigelison, the First National Bank of Wichita Falls, Texas, Defendants.**

United States District Court
S. D. New York.

Dec. 15, 1959.

Paul Windels, Jr., Regional Administrator, New York City, for Securities and Exchange Commission.

McNabb, Sommerfield & James, New York City, for defendants Peerless-New York, Inc. and H. G. Stolle & Co.

Richard H. Wels, New York City, for defendant James B. Boren.

Edward S. Joseph, New York City, for defendant Carlton Securities, Inc.

BICKS, District Judge.

Upon the complaint filed herein and upon the Findings of Fact and Conclusions of Law heretofore filed herein and upon all the other papers and proceedings taken and had, it is

Ordered, adjudged and decreed that the defendants James B. Boren, Peerless-New York, Incorporated, Edward Cantor, Michael Canter, Myron Rosenthal, d/b/a H. G. Stolle and Company, Carlton Securities, Inc., David Mandel and Harry Cohen, their agents, servants, employees, attorneys and assigns and each of them be and they hereby are enjoined, pending final determination of this action and until the further order of this Court from, directly or indirectly:

a. Making use of any means or instruments of transportation or communication in interstate commerce or of the mails to sell the common stock of Belmont Oil Corporation, through the use or medium of any prospectus or otherwise;

b. Carrying such securities or causing them to be carried through the mails or in interstate commerce, by any means or instruments of transportation, for the purpose of sale or for delivery after sale;

c. Making use of any means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell through the use or medium of any prospectus or otherwise the common stock of Belmont Oil Corporation unless a registration statement has been filed as to such security, or while the registration statement is the subject of a refusal order or stop order or (prior to the effective date of the registration statement) any public proceeding or examination under Section 8; and it is further

Ordered, adjudged and decreed that The First National Bank of Wichita Falls, Texas, shall not permit or suffer or allow to be made any disposition of the certificates in its possession representing the 5,235,922 shares of Belmont Oil Corporation deposited with it under the escrow arrangement referred to in finding of fact numbered "20" pending the further order of this Court.

The Court hereby makes the following findings of fact and conclusions of law:

### Findings of Fact

1. Belmont Oil Corporation was incorporated under the laws of the State of Nevada in 1919 under the name of Belmont Divide Mining Company.

2. The charter of the corporation was revoked by the Secretary of State of Nevada in 1924 by reason of failure of the corporation to pay statutory fees.

3. The original capitalization of the corporation consisted of 1,500,000 shares of assessable stock with par value of 10¢ a share.

4. In 1956 the charter of corporation was revived at which time there were outstanding 350,000 shares of its authorized capital stock.

5. No registration statement is or ever has been in effect or on file with the Commission with respect to shares of either Belmont Divide Mining Company or under its successor name Belmont Oil Corporation.

6. After the charter of said corporation had been revived, an assessment of 5¢ a share was caused to be levied upon the outstanding 350,000 shares of stock. The holders of 51,000 shares of the then outstanding stock of the corporation defaulted on the assessment.

7. The beneficial ownership of the balance of the outstanding shares, namely, 299,000 shares had been acquired in one block by W. B. Naismith, president of defendant, National Registrar and Transfer Company.

8. W. B. Naismith undertook and purported to meet the assessment on the 51,000 shares then held by others as well as upon the 299,000 shares previously acquired by him by opening an account receivable of $17,500 on the books of the corporation, said sum being equal to the amount of the assessment, i. e., 5¢ per share on the then total amount of outstanding shares.

9. Contemporaneously with the revival of the corporation and the purported taking over of the outstanding shares officers and directors were elected for the purpose inter alia of making the corporation available for acquisition by interested parties.

10. In or about the month of November 1957 defendant James B. Boren entered into negotiations for the acquisition of the corporation through Naismith and others.

11. As a result of said negotiations, said Boren acquired control of the corporation by purchasing the 350,000 shares outstanding.

12. He thereafter caused to be issued to himself an additional 325,000 shares of stock in exchange for transfer by Boren to the corporation of alleged partial and participating interests in two oil leases in Texas, known as the Lokey and Gilmore leases.

13. Contemporaneously with the acquisition by Boren of the 350,000 shares as set out in finding "11" supra, one Vince Schwenoha received 50,000 shares of the aforesaid 350,000 shares; in addition, Schwenoha and his associates received 162,500 shares or half of the 325,000 shares issued to Boren as set out in finding "12" supra. Thus the total outstanding shares were 675,000 of which 212,500 were held by Schwenoha and his associates and the remaining 462,500 shares by Boren and his associates. The defendant Boren was the actual controlling person of all the 675,000 shares of the corporation outstanding immediately subsequent to his acquisition of said corporation.

14. Defendant Boren directed the defendant National Registrar and Transfer Company through instructions to its president W. B. Naismith to issue certifi-

cates representing 675,000 shares in varying amounts to members of his family, other relatives, friends, business associates (including Schwenoha) and their relatives.

15. On or about November 2, 1957 Boren caused the name of the corporation to be changed from Belmont Divide Mining Company to its present name Belmont Oil Corporation.

16. Continuing to exercise his control of said corporation, Boren caused its capitalization to be changed by increasing the authorized number of shares from 1,500,000 to 15,000,000 shares, reducing the par value per share from 10¢ to 1¢ and by eliminating the assessability of the stock. The total number of shares outstanding was thus increased from 675,000 to 6,750,000 shares.

17. Shortly after this change in the capital structure of the corporation Boren caused the issuance of 1,750,090 shares to his son, Gene A. Boren, business associate Sam Harrison (then respectively the president and secretary-treasurer of the corporation) and two other associates in exchange for transfer to the corporation of partial claims and alleged participations in various oil leases.

18. The interests in the various oil properties transferred to the corporation by Boren or at his direction, including the Lokey and Gilmore leases, appear to have had no substantial value.

19. For the year ending December 31, 1958 the corporation operated at a loss in excess of $30,000.

20. Some time in May 1959 Boren, continuing to exercise control over the affairs of the corporation, caused the deposit of 5,235,922 shares with The First National Bank of Wichita Falls, Texas under an escrow arrangement which by its terms terminated May 20, 1959. The persons in whose name the certificates representing said shares were registered included those persons to whom Boren caused the shares to be transferred in the first instance.

21. On or about March 1, 1959, James B. Boren was a controlling person and owned or controlled the disposition of a majority of the outstanding shares of Belmont Oil Corporation.

22. Joel A. Fox is the president and a director of Belmont Oil Corporation.

23. The National Registrar and Transfer Company was at all times mentioned in the complaint, the transfer agent and registrar for shares of Belmont Oil Corporation.

24. Peerless-New York, Incorporated is a corporation organized and existing under the laws of the State of New York and since the 7th day of April 1957 has been and is now registered as a securities broker-dealer pursuant to Section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78o(b).

25. Edward Cantor is the president and a director of Peerless-New York, Incorporated.

26. Michael Canter is the secretary-treasurer and a director of Peerless-New York, Incorporated.

27. Carlton Securities, Inc. is a corporation organized and existing under the laws of the State of New Jersey and since the 9th day of May 1958 has been and is now registered as a securities broker-dealer pursuant to Section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78o(b).

28. David Mandel is the president, treasurer and a director of Carlton Securities, Inc.

29. Harry Cohen is the secretary and a director of Carlton Securities, Inc.

30. At all times here material, Myron Rosenthal conducted business under the name of H. G. Stolle and Company and since the 2nd day of November 1956, H. G. Stolle and Company has been and is now registered as a securities broker-dealer pursuant to Section 15(b) of the Securities Exchange Act of 1934, 15 U.S. C.A. § 78o(b).

31. Defendant Carlton Securities, Inc. through its principals, agents and employees during the period commencing

on or about March 18, 1959 and continuing until the filing of the complaint herein sold and offered to sell to the public a substantial number of shares of Belmont Oil Corporation at prices ranging from $1 to $1.25.

32. Peerless-New York through its principals, agents and employees commencing on or about August 18, 1958 and continuing until the filing of the complaint herein sold and offered to sell to the public a substantial number of shares of Belmont Oil Corporation at prices ranging from 7/8 to $1.25.

33. Defendant Myron Rosenthal doing business as H. G. Stolle and Company, through its principals, agents and employees during the period commencing on or about December 11, 1958 and continuing until the filing of the complaint herein, sold and offered to sell to the public a substantial number of shares of Belmont Oil Corporation at prices ranging from $1 to $1.25.

34. The broker-dealers named above acquired the shares which they sold and offered to sell to the public in wholesale lots from the defendant Boren, his nominees, associates, relatives and/or other persons affiliated with him, and with his group.

35. The sales of and offers to sell said shares by the defendant broker-dealers were made during the periods set forth herein by use of means or instruments of transportation or communication in interstate commerce, including the long distance telephone and the mails.

### Conclusions of Law.

1. The Court has jurisdiction of the subject matter and the parties.

2. No exemption is available under the Securities Act of 1933, as amended, (15 U.S.C.A. § 77a et seq.) to the defendants in the sale of or offers to sell shares of Belmont Oil Corporation.

3. The sales of and offers to sell shares of Belmont Oil Corporation, directly and indirectly, by defendants James B. Boren, Joel A. Fox, Peerless-New York, Incorporated, Edward Cantor, Michael Canter, Myron Rosenthal, d/b/a H. G. Stolle and Company, Carlton Securities, Inc., David Mandel and Harry Cohen, and each of them have been and are in violation of the registration provisions of the Securities Act of 1933 in that no registration statement is in effect or is on file with the Commission as required by Section 5 of the Securities Act of 1933, 15 U.S.C.A. § 77e.

4. The First National Bank of Wichita Falls, Texas, was named as a nominal defendant only and none of the acts ascribed to the other defendants named herein are ascribed or imputed to them.

5. That unless enjoined, the defendants James B. Boren, Joel A. Fox, Peerless-New York, Incorporated, Edward Cantor, Michael Canter, Myron Rosenthal, d/b/a H. G. Stolle and Company, Carlton Securities, Inc., David Mandel and Harry Cohen, and each of them, may and will continue to sell and offer to sell shares of Belmont Oil Corporation to the public by making use of the means or instruments of transportation or communication in interstate commerce or of the mails in violation of Section 5 of the Securities Act of 1933, 15 U.S.C.A. § 77e.

6. Unless enjoined, the defendants James B. Boren, Joel A. Fox, Peerless-New York, Incorporated, Edward Cantor, Michael Canter, Myron Rosenthal, d/b/a H. G. Stolle and Company, Carlton Securities, Inc., David Mandel and Harry Cohen, and each of them, may and will continue to carry or cause to be carried certificates representing shares of Belmont Oil Corporation by making use of the means or instruments of transportation or communication in interstate commerce or of the mails for the purpose of sale or for delivery after sale in violation of Section 5 of the Securities Act of 1933, 15 U.S.C.A. § 77e.

7. This case and the case of Securities and Exchange Commission v. Belmont Oil Corporation et al., 185 F.Supp. 743 are companion cases and stem from the same factual background.