SECURITIES AND EXCHANGE COM-
MISSION, Plaintiff,

v.

BELMONT OIL CORPORATION, James
B. Boren, Joel A. Fox, Vince Schwen-
oha, Helen Schwenoha, Peerless-New
York, Incorporated, Morris J. Reiter,
d/b/a M. J. Reiter Company, Myron
Rosenthal and Howard G. Stolle, d/b/a
H. G. Stolle and Company, Carlton Se-
curities, Inc., Defendants.

United States District Court
S. D. New York.
Dec. 15, 1959.

Paul Windels, Jr., Regional Adminis-
trator, New York City, for Securities
and Exchange Commission.

McNabb, Sommerfield & James, New
York City, for defendants Peerless-New
York, Inc. and H. G. Stolle & Co.

Richard H. Wels, New York City, for
defendant James B. Boren.

Edward S. Joseph, New York City, for
defendant Carlton Securities, Inc.

BICKS, District Judge.

Upon the complaint filed herein and
upon the findings of fact and conclusions
of law heretofore filed herein and upon
all the other papers and proceedings
taken and had, it is

Ordered, adjudged and decreed that
the defendants James B. Boren, Joel A.
Fox, Vince Schwenoha, Helen Schweno-
ha, Peerless-New York, Incorporated,
Myron Rosenthal, d/b/a H. G. Stolle and
Company and Carlton Securities, Inc.,
their agents, servants, employees, attor-
neys and assigns and each of them be and
they hereby are enjoined pending final
determination of this action and until
the further order of this Court from:

1. Using any means or instruments
of transportation or communication in
interstate commerce or by use of the
mails, directly or indirectly, to obtain
money or property by means of untrue
statements of material facts concern-
ing:

(a) The prospective merger or con-
solidation of Belmont Oil Corporation
with a major oil company;

(b) The ownership of a number of
substantially productive oil and gas wells
in Texas, California and elsewhere;

(c) The present production of sub-
stantial volumes of marketable oil and
gas from Belmont's operating proper-
ties;

(d) The net worth of Belmont Oil
Corporation;

(e) The right or option of existing
stockholders to purchase up to 10 addi-
tional shares of Belmont Oil Corporation
for each share presently held;

(f) The listing of shares of Belmont
Oil Corporation on a national securities
exchange.

2. Using any means or instruments of transportation or communication in interstate commerce or using the mails, directly or indirectly to obtain money or property by means of any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading concerning:

(a) The disposition of the proceeds of the sale of shares of Belmont Oil Corporation;

(b) The actual amounts of oil and gas produced from the properties in which Belmont Oil Corporation held partial participating interests;

(c) The gross receipts by Belmont Oil Corporation from oil properties;

(d) The operating deficit of Belmont Oil Corporation;

(e) The cash and other assets of Belmont Oil Corporation;

(f) The sole asset of Belmont Oil Corporation at the time of its acquisition by defendant Boren, i. e., an account receivable on its books for $17,500;

(g) The past history of Belmont Oil Corporation, including the date of its original incorporation in Nevada in 1919 and the subsequent revocation of its charter in 1924;

(h) The purpose of reviving the charter of the corporation in 1956;

(i) The limited nature of the proprietary interests claimed by Belmont Oil Corporation in various oil leases and properties;

(j) The purported sale by defendant Boren of some 3,900,000 shares of Belmont Oil Corporation to defendant Fox under an alleged contract of sale in October 1958 for $40,000.

The Court hereby makes the following findings of fact and conclusions of law.

### Findings of Fact

1. Belmont Oil Corporation was incorporated under the laws of the State of Nevada in 1919 under the name of Belmont Divide Mining Company.

2. The charter of the corporation was revoked by the Secretary of State of Nevada in 1924 by reason of failure of the corporation to pay statutory fees.

3. The original capitalization of the corporation consisted of 1,500,000 shares of assessable stock with par value of 10¢ a share.

4. In 1956 the charter of corporation was revived at which time there were outstanding 350,000 shares of its authorized capital stock.

5. No registration statement is or ever has been in effect or on file with the Commission with respect to shares of either Belmont Divide Mining Company or under its successor name Belmont Oil Corporation.

6. After the charter of said corporation had been revived, an assessment of 5¢ a share was caused to be levied upon the outstanding 350,000 shares of stock. The holders of 51,000 shares of the then outstanding stock of the corporation defaulted on the assessment.

7. The beneficial ownership of the balance of the outstanding shares, namely, 299,000 shares had been acquired in one block by W. B. Naismith president of defendant, National Registrar and Transfer Company.

8. W. B. Naismith undertook and purported to meet the assessment on the 51,000 shares then held by others as well as upon the 299,000 shares previously acquired by him by opening an account receivable of $17,500 on the books of the corporation, said sum being equal to the amount of the assessment, i. e., 5¢ per share on the then total amount of outstanding shares.

9. Contemporaneously with the revival of the corporation and the purported taking over of the outstanding shares officers and directors were elected for the purpose inter alia of making the corporation available for acquisition by interested parties.

10. In or about the month of November 1957 defendant James B. Boren entered into negotiations for the acquisi-

tion of the corporation through Naismith and others.

11. As a result of said negotiations, said Boren acquired control of the corporation by purchasing the 350,000 shares outstanding.

12. He thereafter caused to be issued to himself an additional 325,000 shares of stock in exchange for transfer by Boren to the corporation of alleged partial and participating interests in two oil leases in Texas, known as the Lokey and Gilmore leases.

13. Contemporaneously with the acquisition by Boren of the 350,000 shares as set out in finding "11" supra, one Vince Schwenoha received 50,000 shares of the aforesaid 350,000 shares; in addition, Schwenoha and his associates received 162,500 shares or half of the 325,000 shares issued to Boren as set out in finding "12" supra. Thus the total outstanding shares were 675,000 of which 212,500 were held by Schwenoha and his associates and the remaining 462,500 shares by Boren and his associates. The defendant Boren was the actual controlling person of all the 675,000 shares of the corporation outstanding immediately subsequent to his acquisition of said corporation.

14. Defendant Boren directed National Registrar and Transfer Company through instructions to its president W. B. Naismith to issue certificates representing 675,000 shares in varying amounts to members of his family, other relatives, friends, business associations (including Schwenoha) and their relatives.

15. On or about November 2, 1957 Boren caused the name of the corporation to be changed from Belmont Divide Mining Company to its present name Belmont Oil Corporation.

16. Continuing to exercise his control of said corporation, Boren caused its capitalization to be changed by increasing the authorized number of shares from 1,500,000 to 15,000,000 shares, reducing the par value per share from 10¢ to 1¢ and by eliminating the assessabil-ity of the stock. The total number of shares outstanding was thus increased from 675,000 to 6,750,000 shares.

17. Shortly after this change in the capital structure of the corporation Boren caused the issuance of 1,750,090 shares to his son, Gene A. Boren, business associate Sam Harrison (then respectively the president and secretary-treasurer of the corporation) and two other associates in exchange for transfer to the corporation of partial claims and alleged participations in various oil leases.

18. The interests in the various oil properties transferred to the corporation by Boren or at his direction, including the Lokey and Gilmore leases, appear to have had no substantial value.

19. For the year ending December 31, 1958 the corporation operated at a loss in excess of $30,000.

20. Some time in May 1959 Boren, continuing to exercise control over the affairs of the corporation, caused the deposit of 5,235,922 shares with The First National Bank of Wichita Falls, Texas under an escrow arrangement which by its terms terminated May 20, 1959. The persons in whose name the certificates representing said shares were registered included those persons to whom Boren caused the shares to be transferred in the first instance.

21. On or about March 1, 1959, James B. Boren was a controlling person and was the owner or controlled the disposition of a majority of the outstanding shares of Belmont Oil Corporation.

22. Joel A. Fox is the president and a director of Belmont Oil Corporation.

23. Peerless-New York, Incorporated is a corporation organized and existing under the laws of the State of New York and since the 7th day of April, 1957 has been and is now registered as a securities broker-dealer pursuant to Section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78o(b).

24. Carlton Securities, Inc. is a corporation organized and existing under the laws of the State of New Jersey and since the 9th day of May 1958 it has

been and is now registered as a securities broker-dealer pursuant to Section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78o(b).

25. At all times here material; Myron Rosenthal conducted business under the name of H. G. Stolle and Company and since the 2nd day of November, 1956, H. G. Stolle and Company has been and is now registered as a securities broker-dealer pursuant to Section 15(b) of the Securities Exchange Act of 1934, 15 U.S.C.A. § 78o(b).

26. Defendant Carlton Securities, Inc., through its principals, agents and employees commencing on or about March 18, 1959 until about June 30, 1959 sold and offered to sell a substantial number of shares of Belmont Oil Corporation at prices ranging from $1 to $1.25.

27. Peerless-New York through its principals, agents and employees commencing on or about August 18, 1958 and continuing thereafter sold and offered to sell to the public a substantial number of shares of Belmont Oil Corporation at prices ranging from ⅞ to $1.25.

28. Defendant Myron Rosenthal doing business as H. G. Stolle and Company, through its principals, agents and employees, commencing on or about December 11, 1958 and continuing until about June 30, 1959 sold and offered to sell to the public a substantial number of shares of Belmont Oil Corporation at prices ranging from $1 to $1.25.

29. The broker-dealers named above acquired the shares from the defendant Boren, his nominees, associates, relatives and/or other persons affiliated with him, and with his group.

30. These sales of and offers to sell said shares by the defendant broker-dealers were made during the periods set forth herein by use of means or instruments of transportation or communication in interstate commerce, including the long distance telephone, and the mails.

31. The defendants Vince and Helen Schwenoha have standing in their names or in the names of their nominees, associates and affiliates a substantial number of shares of Belmont Oil Corporation.

32. A substantial portion of the shares in the names of the defendants Vince and Helen Schwenoha were deposited with The First National Bank of Wichita Falls, Texas, under an escrow arrangement established at the direction of the defendant James B. Boren.

33. The defendant broker-dealers, namely, Carlton Securities, Inc., Peerless-New York, Incorporated and H. G. Stolle and Company through their principals, agents and employees in the course of the sale of and offers to sell shares of Belmont Oil Corporation to the public made the following false and fraudulent representations or one or more of them through the use of the long distance telephone and the mails:

(a) That a merger or consolidation of Belmont Oil Corporation with a major oil company was under negotiation.

(b) That Belmont Oil Corporation owned a number of substantially productive oil and gas wells in Texas, California and elsewhere.

(c) That Belmont Oil Corporation was producing substantial volumes of marketable oil and gas from its operating properties.

(d) That Belmont Oil Corporation had a substantial net worth.

(e) That the existing stockholders had a right or option to purchase additional shares of Belmont Oil Corporation in a ratio of up to 10 additional shares for each share held.

(f) That the shares of Belmont Oil Corporation would be listed on a national securities exchange.

34. The prices at which said shares were offered and sold by said broker-dealers were grossly inflated in that the said shares were offered and sold to the public at prices varying between ⅞ and 1¼, when the greatest possible value attributable to the said shares did not exceed approximately 15¢ per share.

35. The defendant broker-dealers, namely, Carlton Securities, Inc., Peerless-New York, Incorporated and H. G. Stolle and Company, through their principals, agents and employees, in the course of the sale of and offers to sell shares of Belmont Oil Corporation to the public omitted to state the following material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading:

(a) That the proceeds resulting from the sale of these shares were not going to the benefit of Belmont Oil Corporation or were not in any way contributing to its capital or operational facilities.

(b) That the proceeds of the sale of these shares were in fact going to the group of insiders, including the defendants James B. Boren, Vince and Helen Schwenoha, Joel A. Fox and their nominees, associates and other persons affiliated with them.

(c) That the actual amounts of oil and gas produced by the properties in which Belmont held partial participating interests were minute.

(d) That Belmont Oil Corporation operated at a loss in excess of $30,000 for the year ending December 31, 1958.

(e) That Belmont Oil Corporation possessed insignificant assets, liquid or fixed.

(f) That at the time defendant Boren acquired control of Belmont Oil Corporation its sole asset was an account receivable on its books in the sum of $17,500 owing from W. B. Naismith representing an assessment of 5¢ per share on its outstanding shares of stock when the said assessment was purportedly levied.

(g) That Belmont Oil Corporation had been originally incorporated in 1919 in the State of Nevada under the name of Belmont Divide Mining Company and that in 1924 its charter had been revoked for failure to pay relatively minimal annual fees to the State of Nevada.

(h) That the corporate charter was revived in 1956 solely for the reason that a group of persons, unnamed, was apparently interested in acquiring the charter of a pre-1933 Act Corporation.

(i) That the nature of the proprietary interests claimed by Belmont Oil Corporation were limited to alleged partial participations in various oil leases, some of which had practically no visible production.

(j) That defendant James B. Boren had purported to sell upwards of 3,-600,000 shares of Belmont Oil Corporation to defendant Joel A. Fox under an alleged contract of sale on October 15, 1958 for $40,000, of which $1,000 was paid against delivery of about 1,000,000 shares of Belmont Oil Corporation; no part of the balance of the purchase price has been paid.

36. The aforesaid broker-dealers, their principals, agents and employees in their sales of and offers to sell shares of Belmont Oil Corporation to the public made and continued to make, false and misleading statements and continued to fail to state material facts as aforesaid.

Conclusions of Law

1. That the Court has jurisdiction of the subject matter and the parties.

2. That the defendant broker-dealers, namely, Carlton Securities, Inc., Peerless-New York, Incorporated and H. G. Stolle and Company through their principals, agents and employees, in the sales of and offers to sell shares of Belmont Oil Corporation and in order to induce the purchase of said shares by the public, made material false and fraudulent representations.

3. In connection with said sales of and offers to sell shares of Belmont Oil Corporation said broker-dealers failed to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

4. Unless enjoined, the defendants James B. Boren, Joel A. Fox, Vince Schwenoha, Helen Schwenoha, Peerless-New York, Incorporated, Myron Rosenthal, d/b/a H. G. Stolle and Company, and Carlton Securities, Inc., and each of

them, may and will continue to sell and offer to sell shares of Belmont Oil Corporation to the public by making use of the means or instruments of transportation or communication in interstate commerce or of the mails in violation of Section 17(a) of the Securities Act of 1933, 15 U.S.C.A. § 77q(a).

5. This case and the case of Securities and Exchange Commission v. Belmont Oil Corporation et al., 185 F.Supp. 739, are companion cases and stem from the same factual background.